UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| JOHN J. SWINT, | ) | CASE NO. 5:07 CV 0607 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| STEPHEN BUCKLEY, et al., | ) | AND ORDER |
| | ) | |
| | ) | |
| Defendants. | ) | |


Pro se plaintiff John J. Swint filed the above-captioned in forma pauperis action against Stephen Buckley, Vice President and Publisher of The Times News Publishing Company ("Times-News"), Mike Little, General Manager of the Times News, and the Times-News. Mr. Swint asserts this court's jurisdiction based on violations of the Federal Racketeer Influenced and Corrupt Organization (RICO),18 U.S.C. §§1961-68, Fraud by United States Mail, 18 U.S.C. §§ 1341, 1343 & 1349, Conspiracy to Defraud the United States, 18 U.S.C. § 371, Interference with Commerce, 18 U.S.C. §§ 1951, 1956 & 1960, Civil Rights Act, 42 U.S.C. §1985(2) & 1986 and the Omnibus Clause,18 U.S.C. § 1503, as well as diversity of citizenship. Plaintiff is a resident of Ohio and identifies all of the defendants as residents of North Carolina. He alleges that the defendants

"formed an illegal enterprise in at least April of 2004 with the unlawful intent to conspire, then steal money from home delivery subscribers and independent contractors." (Compl. at 4.) He seeks "personal damages" in the amount of $675,000 and $10,000,000 in punitive damages "because of defendants['] illegal and civil acts against him." (Compl. at 25.)

*Factual Background*

Mr. Swint's complaint is rife with statements concluding that the defendants' activities are illegal. He alleges that Mr. Buckley and Mr. Little use Times-News and its parent company, Freedom Communications, as front operations within which to operate a RICO enterprise. He specifically alleges that in April 2004 the parties entered into a partnership to "facilitate and run their criminal racket. Together both are criminal plotters who are routinely stealing other people's money, then making it appear legal through a laundering technique they created." (Compl. at 6.)

Times-News is described as a North Carolina Corporation that sells newspapers to "Home Delivery Independent Contractors at wholesale rates." (Compl. at 6.) Mr. Swint worked as an independent contractor for Times News. As such, he would purchase newspapers from Times News and then sell them directly to subscribers at a retail rate he established. Mr. Swint asserts, without a basis in fact or law, that "[a]ll Home Delivery subscribers belong to the independent contractors. Neither of the defendants, Times News or Freedom Communications has any fiduciary relationship, legal ownership or any other rights to home delivery subscribers['] accounts or their money. Nonetheless, defendants are stealing that money, laundering then investing in the Times News and or Freedom Communications as profit." (Compl. at 6.)

Beginning in May 2004, the defendants directed that all "pre-paid home delivery newspaper subscriber payments be deposited into either Bank of America or one of its other

2

company financial institutions.  This money is deposited into interest bearing accounts in the name of Times-News Newspaper or Freedom Communications.  These monies are not actually payments belonging to Times-News Newspaper or Freedom Communications.  In truth, the money belongs to the Independent Contractors who deliver the newspapers each day to their subscribers." (Compl. at 8.)  It is not clear to whom this change was directed.

At some undisclosed point, the defendants approached Mr. Swint to "enter into their ongoing RICO enterprise[,]" but he refused.  Instead, he threatened to expose their actions.  They responded by "attempt[ing] to retrieve documents already in plaintiff's position, and to stop defendant from any further access to files, records and system statistics they unlawfully terminated him and demanded he return all company property in his possession." (Compl. at 7.)  He adds that the defendants "decided to hinder and stop plaintiff by their terminating him from Times-News" in an effort to thwart "current or future contact with authorities." (Compl. at 7.)

It is Mr. Swint's position that the defendants are aware of their illegal activities because the "independent newspaper contract . . . clearly states that <u>the company sells newspapers to the contractors at 'wholesale rates".  And in turn, the contractor sells to subscribers at 'retail</u>.'" (Compl. at 7)(emphasis in original.)  As an example of defendants' "ongoing fraud," Mr. Swint notes that from May 2004 to the present the defendants used extortion tactics and trickery to entice customers into paying their newspaper delivery costs directly to the company "while never telling subscribers or contractors the defendants implemented a 'No Refund' policy." (Compl. at 9.)  Specifically, the defendants would "fraudulently entice new and current home delivery subscribers to pre-pay for 3-6 or 12 months and longer for newspaper delivery.  Offering special discounts, promotions and other inducements.  Pre-Payments are then made directly to the Times-News

3

utilizing subscriber checks, debit, credit cards and automatic monthly deductions from subscriber's personal checking accounts." (Compl. at 9-10.) This money would be deposited into the interest bearing accounts of either Times News or Freedom. At no time would customers be notified that the company had a 'no refund' policy. Mr. Swint does admit that if a subscriber were initially refused a refund and threatened to file a lawsuit the company "sometimes agrees to refund the money." (Compl. at 11.) He asserts that this practice not only 'swindles' money from the customer, but deprives the independent contractors of money that is due to them "up to when the customer stopped delivery." (Compl. at 11.)

Based on these acts, Mr. Swint repeatedly asserts that the "defendants have an ongoing RICO enterprise and operation to covertly rob and keep any and all interest earned from . . . subscriber payments and launder then invest in Times News or Freedom Communications accounts to use as profit." (Compl. at 9.) It is his assertion that "[a]ny earned interest belongs to the independent contractors. Using wire, mail and other commerce to carry out their scheme." (Compl. at 9.)

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss a claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989);

---

[1] A claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v.

Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

### *Racketeering Activity and Predicate Acts*

This action lacks an arguable basis in law. To even establish 'racketeering activity' in a RICO suit, Mr. Swint must allege a predicate act under 18 U.S.C. § 1961(1). Kenty v. Bank One, Columbus, N.A., 92 F.3d 384, 389 (6th Cir.1996). In all of his RICO counts, Mr. Swint alleges extortion, as well as mail and wire fraud, 18 U.S.C. §§ 1341, 1343. See § 1961(1)(A) (listing extortion chargeable under State law); § 1961(1)(B) (listing violations of 18 U.S.C. §§ 1341, 1343).

### *Mail/Wire Fraud*

Rule 9(b) of the Federal Rules of Civil Procedure provides that in a complaint alleging fraud, "the circumstances constituting fraud ... shall be stated with particularity." FED.R.CIV.P. 9(b). The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud. Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir.1988). In the Sixth Circuit, the rule 9(b) requirement is read "liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Coffey v. Foamex L.P., 2 F.3d 157, 161- 62 (6th Cir.1993) (internal quotation marks and citation omitted). This liberal reading stems from the influence of Rule 8, which "requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations." See id.; Michaels Bldg. Co., 848 F.2d at 679 (quoting Fed.R.Civ.P. 8(a), (e)). Even against Rule 8's "backdrop admonition of simplicity

---

Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

5

in pleading," id., "[h]owever, allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." Coffey, 2 F.3d at 162 (internal quotation marks and citation omitted).

The centerpiece of Mr. Swint's claim is his assertion that the defendants (1) were not entitled to solicit newspaper subscriptions directly; and (2) that their failure to disclose an alleged "no refund" policy constitutes fraud. This assertion falls short of the criteria for an allegation of fraud. There is no claim that Mr. Swint relied on this lack of disclosure to his detriment. If an injury occurred at all, it would have been the prospective customer who suffered a loss. By his own admission, it appears that if a customer complained 'loudly enough' he or she would be refunded any money paid for a newspaper subscription. As a self described independent contractor, Mr. Swint does not proffer a single allegation that he did not receive everything for which he bargained. His suggestion that he had an exclusive relationship with newspaper subscribers is not supported by any facts other than his conclusion that it is so. This does not state a claim for fraud.

With regard to any allegation of extortion, Mr. Swint has similarly failed. The statute requires that a violation of state law be alleged and plaintiff has not alleged extortion under any state law. For the reasons set forth above, his claims under 18 U.S.C. §§ 371,1341, 1343, 1349,and 1961-1968 are dismissed.

*Civil Rights Claims*

Mr. Swint's claim under 42 U.S.C. § 1985 must also be dismissed. He does not set forth any specific right of which he has been deprived by the defendants. The difficulty with his conclusory assertions rests on the fact that "it is not sufficient to sustain jurisdiction that the pleading merely assert that conduct complained of violates constitutional rights. It must set forth facts from

6

which the court can see that such rights have been violated. There must be a 'federal question, not in mere form, but in substance, and not in mere assertion, but in essence and effect.'" Cuyahoga River Power Co. v. Northern Ohio T. & L. Co., 252 U.S. 388, 397(1920).  In Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 202 (1877) the Court said: "The office of pleading is to state facts, not conclusions of law. It is the duty of the court to declare conclusions, and of the parties to state the premises.'" Cf. Hull v. Burr, 234 U.S. 712, 710(1914); Norton v. Whiteside, 239 U.S. 144, 147(1915).

To establish a violation of § 1985, a plaintiff must allege that the defendants conspired together for the purpose of depriving the plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus.  Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999). There are no facts alleged which suggest that any of the defendants conspired together to deprive him of his right to equal protection of the law or that their actions were in any way motivated by plaintiff's race.

Because Mr. Swint has failed to state a claim under § 1985, his claims for relief under § 1986 must also be dismissed.  Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them.  Without a violation of § 1985, there can be no violation of § 1986.

*Criminal Statutes*

Even if Mr. Swint had standing, he has failed to state any claim under the "omnibus clause" of § 1503, which provides:

> Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or

7

>impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1503. The Omnibus clause, as well as 18 U.S.C. §§ 1951, 1956 & 1960, is punishable in a criminal action by imprisonment and by liability to the United States in a civil action. See 18 U.S.C. § 1956 (whoever violates this statute is " liable to the United States for a civil penalty"). Criminal actions in the federal courts, however are initiated by the United States Attorney. 28 U.S.C. § 547; Fed. R. Crim. P. 7(c). As a private actor in a civil case, plaintiff does not have standing to charge the defendants with any criminal violations. Accordingly, his claims under 18 U.S.C. §§ 1503, 1951, 1956 and 1960 are dismissed.

Having failed to state either state or federal claims, this court lacks jurisdiction over plaintiff's complaint. Based on the foregoing, Mr. Swint's Motion to Proceed in forma pauperis is granted and his complaint is dismissed. The court certifies that an appeal from this dismissal could not be taken in good faith.[2]

IT IS SO ORDERED.

Date: May 30, 2007

S/John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a) (3) provides: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."